# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Phillip Jergenson,<br><br>              Plaintiff,<br><br>              v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>              Defendants. | No. 22-cv-2040<br><br>Judge Manish S. Shah<br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Phillip Jergenson ("Plaintiff"), requests preliminary injunctive relief on his Complaint for trademark infringement and counterfeiting, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act, and civil conspiracy against the defendants identified on Schedule "A" of the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and/or selling unauthorized/unlicensed counterfeit versions of Plaintiff's PROTO PIPE branded products. Additionally, Defendants are using infringing versions of Plaintiff's federally registered PROTO PIPE trademark through various fully interactive, commercial internet stores operating under at least the Seller Aliases identified in Schedule "A" of the Complaint (collectively, "Defendant Internet Stores"). Defendants have targeted sales to Illinois residents by setting up and operating one or more e-commerce internet stores that target United States consumers using one or more Seller Aliases and offer shipping to the United States, including Illinois. E-commerce internet stores operating under these Seller Aliases share unique identifiers establishing a logical

1

relationship between them. Further Defendants attempt to avoid and mitigate liability by operating under one or more of the Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff has been forced to file this action to combat Defendants' counterfeiting of the federally registered PROTO PIPE trademark, as well as to protect unknowing consumers from purchasing counterfeit versions of the PROTO PIPE branded product over the internet. Defendants' ongoing unlawful activities should be enjoined, and Plaintiff respectfully requests that this Court issue a preliminary injunction.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademark and Products

Plaintiff is an individual who resides in California. He created and sells high-quality, unique smoking pipes containing a tobacco reservoir, cleaning rod, and a uniquely covered bowl all sold, offered for sale, and marketed under the PROTO PIPE brand through Proto Pipe, LLC, a California Limited Liability Company. Declaration of Phillip Jergenson at ¶ 3 [Doc. 5-2] (hereinafter the "Jergenson Declaration"). Plaintiff sells these smoking pipes under the federally registered PROTO PIPE trademark. *Id.* at ¶¶ 3-4. The Plaintiff's website page for his PROTO PIPE branded products details Plaintiff's founder's original design, idea, and inspiration behind the product. *Id.*

In 1971, Plaintiff introduced his smoking pipe featuring his PROTO PIPE trademark marketed under Plaintiff's PROTO PIPE brand. *Id.* Plaintiff's unique products have been advertised with their federally registered trademarks for several years. Plaintiff's advertisements and websites feature original content and reviews for PROTO PIPE branded products. Jergenson Declaration at ¶ 7. Plaintiff is engaged in the business of manufacturing, distributing, and retailing these high-quality game products within the Northern District of Illinois under the federally

2

registered trademark PROTO PIPE. *Id.* at ¶¶ 5, 6, 11. Defendants' sales of the counterfeit item in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff. *Id.* at ¶¶ 9, 20.

Since Plaintiff's initial launch of the original PROTO PIPE branded product, Plaintiff's trademarks and products have been the subject of substantial and continuous marketing and promotion by the Plaintiff throughout the United States and, due to Plaintiff's strong internet presence, throughout the entire world. *Id.* at ¶¶ 7-8. Plaintiff's brand, symbolized by the PROTO PIPE trademark, is a recognized brand of high-quality smoking pipes. *Id.* at ¶ 7. The PROTO PIPE trademark is distinctive and identifies the merchandise as goods from Plaintiff. *Id.* As a result, customers and consumers recognize that products bearing the distinctive PROTO PIPE trademark originate exclusively with Plaintiff. *Id.* The national recognition, reputation, and goodwill associated with Plaintiff's brand has made the PROTO PIPE trademark extremely valuable assets of Plaintiff. *Id.* at ¶¶ 7, 8. The registration of Plaintiff's marks constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b). *Id.* at ¶ 4-5.

### B. Defendants' Unlawful Activities

The success of Plaintiff's brand has resulted in significant counterfeiting. *Id*. at ¶¶ 9-10. In recent years, Plaintiff has identified hundreds of fully interactive online marketplace listings on platforms such as, but not limited to, Alibaba, AliExpress, Amazon, DHgate, eBay, and Wish, including the Seller Aliases attached to the Defendant Internet Stores, which were offering for sale and selling counterfeit PROTO PIPE branded products to consumers in this Judicial District and throughout the United States. *See id*. Plaintiff's allegations in the Complaint regarding registration patterns, common design elements, similarities among the Defendant Internet Stores, and

3

counterfeit product for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are interrelated. *Id*. at ¶¶ 15-17.

As demonstrated in Exhibit 2 to the Jergenson Declaration [Docs. 5-4 to 5-7], Plaintiff has compiled hundreds of examples of Defendants' infringing uses of Plaintiff's trademark and offers for sale and sale of counterfeit items. In sum, the infringing uses, and counterfeit items are extremely close in appearance to the genuine PROTO PIPE branded product and each counterfeit item is shipped in identical packaging.

### III.    ARGUMENT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that rise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, ecommerce Internet stores operating under Defendants' Seller Aliases. Specifically, Defendants have targeted sales from Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more of the Defendant Seller Aliases through which Illinois residents may purchase products using infringing versions of Plaintiff's PROTO PIPE trademark and counterfeit versions. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal

jurisdiction proper over defendants offering to sell alleged infringing products to United States residents, including Illinois, and no actual sale was required); *see also* Jergenson Declaration at ¶¶ 9-11. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *Id.*

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and goodwill symbolized by its PROTO PIPE trademark, as well as their continuing, unlicensed use of Plaintiff's Works in furtherance of their activities. Rule 65(a) of the Federal Rules of Civil Procedure provides that the Court may issue a preliminary injunction where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(a). The entry of a preliminary injunction is appropriate because it would enjoin Defendants from benefiting from their wrongful use of the PROTO PIPE trademark and preserve the status quo until Defendants produce a complete accounting and the Court can rule on the merits of the Complaint.

In the absence of a preliminary injunction, Defendants can and will likely register new domain names or online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. Jergenson Declaration at ¶ 17. As such, Plaintiff respectfully requests this Court to issue the requested preliminary injunction.

**A. Standard for a Preliminary Injunction**

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and, (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If this Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if denied. *Id*. Finally, this Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. This Court must then weigh all these facts, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what this Court has deemed the "sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Plaintiff is Likely to Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act it if, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. See 15 U.S.C. § 1126(a). First, a plaintiff must show "that its mark is protected under the Lanham Act" and, second, that the challenged mark is likely to cause confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).

Plaintiff satisfies the first element of his Lanham Act claim because Plaintiff's PROTO PIPE trademark is inherently distinctive and registered with the United States Patent and Trademark Office. *See* Exhibit 1 to the Jergenson Declaration [Doc. 5-3]. The registration for the PROTO PIPE trademark is valid, subsisting, is in full force and effect, and constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use the PROTO PIPE trademark

pursuant to 15 U.S.C. § 1057(b). Plaintiff has not licensed or authorized Defendants to use the PROTO PIPE trademark, and none of the Defendants are authorized retailers of genuine PROTO PIPE branded products. Jergenson Declaration at ¶ 12.

The Seventh Circuit has held that where "one produced counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, this Court can presume a likelihood of confusion from Defendants' use of the PROTO PIPE trademark. The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether a likelihood of confusion exists, including: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendants' intent are "particularly important." *Id.*

Plaintiff submitted extensive documentation showing that Defendants are offering for sale and selling counterfeit items that look confusingly similar to genuine PROTO PIPE branded products and use infringing marks identical to the PROTO PIPE trademark. The similarities between Plaintiff's genuine product and Defendants' counterfeit items are readily apparent. Both the genuine products and counterfeit items are advertised as smoking pipes. *See* Jergenson Declaration at ¶¶ 11, 15. In addition, the design of both the genuine products and counterfeit items use Plaintiff's innovative smoking pipe design marketed and associated with the PROTO PIPE

trademark to attract smoking enthusiasts. *Id.* at ¶ 9. Defendants use the PROTO PIPE trademark to advertise their product to unsuspecting consumers. *Id.* at ¶¶ 12, 16.

Both Plaintiff and Defendants advertise and sell their products to consumers via the internet, thus Defendants target consumers who are looking for the genuine PROTO PIPE branded product. *Id.* at ¶ 12. Those consumers are diverse, with varying degrees of sophistication, and are likely to have difficulty distinguishing genuine PROTO PIPE branded products from counterfeit items. Therefore, it appears that Defendants are intentionally trying to induce consumers looking for genuine PROTO PIPE branded products to purchase counterfeit versions instead. *Id*. at ¶ 21. In that regard, Defendants advertise counterfeit items using the PROTO PIPE trademark. *Id*. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as the genuine PROTO PIPE branded product. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement, counterfeiting, and false designation of origin.

### C. There is No Adequate Remedy at Law, and Plaintiff Will Continue to Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (internal citations omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality

8

of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the PROTO PIPE trademark has harmed and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Jergenson Declaration at ¶¶ 19-23. The extent of the harm to Plaintiff's reputation and the goodwill associated, with the possible diversion of customers due to loss in brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to the plaintiff's goodwill was irreparable harm for which the plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued in accordance with Federal Rule of Civil Procedure 65(a).

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest is Served by Entry of the Injunction

As noted above, if this Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits; (2) no adequate remedy at law; and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration, since "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc v. Reed Elsevier*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the

mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of counterfeit products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores through their Seller Aliases with Plaintiff's approval and endorsement. Jergenson Declaration at ¶¶ 9, 17. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Jergenson Declaration at ¶ 21, 23. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a).

### A. A Preliminary Injunction Enjoining Defendants' Unauthorized and Unlawful Use of the PROTO PIPE Trademark is Appropriate

Plaintiff requests a preliminary injunction requiring Defendants to immediately cease all use of the PROTO PIPE trademark, or substantially similar marks on or in connection with all Defendant Internet Stores and their Seller Aliases. Such relief is necessary to stop the ongoing harm to the PROTO PIPE trademark and associated goodwill, as well as consumer harm, and to

prevent the Defendants from continuing to benefit from their unauthorized use of the PROTO PIPE trademark. Jergenson Declaration at ¶ 23. Plaintiff is currently unaware of both the true identities and locations of Defendants, as well as other Seller Aliases, used to distribute counterfeit products. Jergenson Declaration at ¶¶ 13-14. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites").

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests continuing restraint of Defendants' assets so that Plaintiff's right to equitable accounting of Defendants' profits from sales of counterfeit products is not impaired. Issuing a continuance on the restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. Jergenson Declaration at ¶ 18.

Courts have the inherent authority to issue a prejudgment asset restraint when the plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claims, and thus, according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover . . .

defendants' profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites").

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered because of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their funds from their infringing and counterfeit activities to offshore bank accounts. Thus, an asset restraint remains proper in the requested preliminary injunction during the pendency of this action.

### C. Plaintiff is Entitled to Continued Expedited Discovery

The Supreme Court of the United States held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfield*, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have much flexibility in determining whether to grant a party's request for discovery. *Id.* (internal citations omitted). Further, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff is only now beginning to receive the documents and information the Court ordered in the TRO in this matter [Doc. 16]. The e-commerce platforms used by Defendants have substantially complied with the Subpoenas served upon them, and the identified defendants have been served with the Summons, Complaint, and TRO. However, certain e-commerce platforms have not yet provided the sales information required by the Court, although they are cooperating otherwise. Plaintiff respectfully requests that expedited discovery in this matter remain in effect to further discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiff's proposed preliminary injunction is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts to freeze them is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Therefore, Plaintiff respectfully requests that expedited discovery be continued.

## V. THE EXISTING BOND SHOULD SECURE THE INJUNCTIVE RELIEF

In connection with the TRO, Plaintiff posted a bond of $100,000 by order of the Court [Doc. 17]. Due to the strong and unequivocal evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that the bond now on deposit with the Clerk stand as security for the preliminary injunction as well.

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Plaintiff's business, the well known PROTO PIPE brand, and consumers. Without entry of the requested relief, Defendants' offering for sale and sale of counterfeit items will continue to lead prospective purchasers and

others to believe that Defendants' counterfeit items have been manufactured by or authorized by Plaintiff, when this is not the case. Thus, entry of a preliminary injunction is vital. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a preliminary injunction enjoining Defendants to immediately cease all use of the PROTO PIPE trademarks, or substantially similar mark, on or in connection with all Defendant Internet Stores and their Seller Aliases.

Dated: July 11, 2022

Respectfully submitted,

/s/ James E. Judge
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com