UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP JERGENSON,

    Plaintiff,

  v.

INHALE INTERNATIONAL LIMITED,

    Defendant.

No. 22 CV 2040

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Phillip Jergenson alleges that internet sellers including defendant Inhale International Limited infringed on his trademarks and sold counterfeit products. He sues for trademark infringement, counterfeiting, false advertising, violation of the Illinois Uniform Deceptive Trade Practices Act, and conspiracy. I issued a temporary restraining order expediting discovery and enjoining all of the defendants from using Jergenson's trademarks, passing off counterfeit products as genuine, or transferring assets. Jergenson later moved for a preliminary injunction. I granted the injunction against defendants who did not appear and object to it. But Inhale has appeared and opposes Jergenson's efforts to enforce his registered trademarks. Inhale moves to dissolve the temporary restraining order. For the reasons that follow, Inhale's motion to dissolve the TRO is denied and plaintiff's motion for an injunction against Inhale remains under advisement.

## I. Standard of Review

A preliminary injunction is "an extraordinary remedy never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) (quoting *Winter*, 555 U.S. at 20). Although Jergenson doesn't need to show that he will definitely win the case, he must show that he has "some likelihood" of succeeding on the merits. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)).

## II. Facts

Jergenson created, manufactured, and sold smoking pipes containing a tobacco reservoir, cleaning rod, and a unique covered bowl. [10] ¶ 5.[1] Jergenson began selling pipes in 1971, and his products were marketed under the proto pipe brand through Proto Pipe LLC, a California limited liability company. *Id.* ¶¶ 5–6; [34-3] at 2–4. Plaintiff is listed as a manager or member of the LLC. [34-3] at 4.

Jergenson applied for trademark registration for the words "Proto Pipe" and for a "PP" logo in August 2018 and April 2019. [34-1] at 2; [34-2]. Jergenson's trademarks were registered on April 9 and October 29, 2019. [10-2]; [10] ¶ 3. In his

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the amended complaint, [10], and from the exhibits filed with the parties' briefs. All previously sealed filings, [5], [11], [16], are unsealed.

2

application, Jergenson said that he owned the marks in a sole proprietorship, that the marks were first used in 1976, and categorized his products as International Class 34, smoking pipes. [34-1] at 2–3.[2] The official trademark registrations also categorized the marks into Class 34. [10-2].

Advertising for the proto pipe described it as a "Patented Tobacco Smoking System." [34-1] at 9. But a post on social media showed that the brand was also marketed to marijuana smokers, *see* [25] at 27, and social media posts, a newspaper feature, and reviews showed that some marijuana users endorsed the proto pipe. *See id.* at 11, 14, 23–24, 29, 31, 33, 35. On Proto Pipe LLC's website, Jergenson described the development of the proto pipe business as tied to the legality of marijuana. *Id.* at 4; Phil Jergenson, *About Us*, Proto Pipe, https://protopipellc.com/pages/about-us (last visited August 18, 2022). Jergenson described his business in the 1980s as "paraphernalia manufactur[ing]," and wrote that to avoid the war on drugs he "turned the business over to a friend who did not smoke pot and labeled [the proto pipe] as a tobacco pipe." [25] at 5. The new owner and Jergenson agreed that Jergenson could return to the business "when legalization [of marijuana] was imminent." *Id.*

According to a *Los Angeles Times* feature on the proto pipe, the product had a reputation as "the Swiss Army knife of paraphernalia." [25] at 11; Adam Tschorn, *I*

---

[2] *See* Nice Classification, Eleventh Edition § 34, version 2022 (NCL 11-2022), United States Patent and Trademark Office, https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-current-edition-version-general-remarks (last visited August 18, 2022).

3

*needed answers. My hunt to find the backstory of the perfect pot pipe.*, Los Angeles Times (Oct. 27, 2021, 11:01 a.m.), https://www.latimes.com/lifestyle/story/2021-10-27/in-praise-of-the-proto-pipe-a-practically-perfect-piece-of-pot-paraphernalia.

Jergenson designed the pipe to include the implements needed to smoke marijuana, including a "removable poker, a place to stow some weed and a permanent screen." [25] at 14. The article noted that in 1987 Jergenson sold his pipe-making business to a friend. *See id.* at 16. The new owner of the business continued to make proto pipes for three decades, but during that period knockoff versions of the pipe became common while the proto pipe brand was "nowhere to be found." *Id.* at 16–17. Jergenson himself launched a competing product at one point, but regained control of the proto pipe brand in 2018. *Id.* at 17.

Defendants—including Inhale—created numerous internet stores that appeared to be selling genuine proto pipe products. [10] ¶ 13.[3] In reality, they sold inferior imitations branded with the genuine trademarks. *Id.* Defendants knew of plaintiff's ownership in the trademarks but, likely operating together, used Jergenson's marks to advertise and sell counterfeit items, causing confusion in the market. *Id.* ¶¶ 17–21, 23.

---

[3] In its answer to the amended complaint, Inhale disputes plaintiff's allegations as to its infringing conduct. *See* [26] ¶¶ 13, 17–21, and 23. But screenshots show that Inhale sold a pipe labeled as "proto pipe." [5-4] at 1–2. There's been no request for an evidentiary hearing or suggestion that those images aren't authentic, and the affiant—Jergenson—is competent to assess that the products are infringing. *See* [5-2] ¶ 9. I find that defendant Inhale sold imitation proto pipes through its online store.

### III. Analysis

I granted plaintiff's ex parte motion for a temporary restraining order on June 13, 2022, [15]; [16], and that order expired (after an extension) on July 11. [19]. Nine days later—on July 20—Inhale moved to dissolve the temporary restraining order. [24]. Because the order has already expired, however, Inhale's motion to dissolve is moot. *See* 13C Wright and Miller, *Federal Practice & Procedure, Jurisdiction & Related Matters* § 3533.3.2 (3d ed.) ("Once an order has expired by its own terms, further review...usually is mooted.").

On July 21, I granted plaintiff's motion for a preliminary injunction as to the other defendants. [28]; [29]. Inhale opposes any injunction against it and argues that (1) plaintiff lacks standing to bring this suit, (2) Jergenson abandoned his trademarks, and (3) the trademarks are invalid and unenforceable because the proto pipe is unlawful drug paraphernalia. [24] at 4–11.

#### A. Proper Plaintiff

The parties agree that Proto Pipe LLC, not Jergenson himself, sold and marketed the pipes. [24] at 10–11; [34] at 6–7. The articles of organization for Proto Pipe LLC (attached to plaintiff's response to Inhale's motion), show that Jergenson is a member or manager of the LLC. *See* [34-3] at 4. But Inhale argues that because Jergenson isn't the one doing the selling, he doesn't have "standing" to sue. [24] at 10–11.

Under the Lanham Act, trademark registrants can bring an infringement action. *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014) (citing 15 U.S.C. § 1127). When a registered mark is "used legitimately by related companies, such use

5

shall inure to the benefit of the registrant." 15 U.S.C. § 1055; *see* § 3 *McCarthy on Trademarks and Unfair Competition* § 18:38 (5th ed.). A related company is any legally recognized organization "whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1127; *see Eva's Bridal Ltd. v. Halanick Enterprises, Inc.*, 639 F.3d 788, 790 (7th Cir. 2011) (quoting *Restatement (Third) of Unfair Competition* § 33, comment a) (When a registrant licenses use of a mark to another but retains sufficient control "under the circumstances to insure that the licensee's goods or services would meet the expectations created by the presence of the trademark," that use inures to the benefit of the owner of the mark.).

That Jergenson is a member or manager of Proto Pipes LLC means that there's a reasonable likelihood that the LLC is his controlled licensee, and so its sales of the proto pipe are attributable to Jergenson. *See* § 3 *McCarthy on Trademarks and Unfair Competition* § 18:43.50 (5th ed.) (discussing implied licenses); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (citing *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1559 (Fed. Cir. 1983)) (same). Jergenson registered the marks, the LLC's use of the mark inures to his benefit, and plaintiff is a proper plaintiff in an infringement action. *See* 15 U.S.C. § 1055; *Specht*, 747 F.3d at 933.

### B. Abandonment

Inhale argues that Jergenson abandoned the marks, either because another business sold the pipe from 1987 to 2017, or because during that time others sold knockoffs and the marks became generic. [24] at 9–10. Plaintiff admits that he sold his business in 1987. [34] at 6. The buyer continued to make proto pipes for the next

three decades, and in 2018 Jergenson reacquired the business and then registered the proto pipe trademarks in April and October 2019. [25] at 16–17; [10-2].

Abandonment is a defense to a claim of infringement. 15 U.S.C. § 1115(b)(2). A mark can be abandoned either (1) "[w]hen its use has been discontinued with intent not to resume such use" (nonuse for three consecutive years is prima facie evidence of abandonment) or (2) "[w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose significance as a mark." 15 U.S.C. § 1127; *see Specht v. Google Inc.*, 747 F.3d 929, 934 (7th Cir. 2014); 3 *McCarthy on Trademarks and Unfair Competition* § 17:1 (5th ed.). The defendant bears the burden of proving abandonment. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 956 (7th Cir. 1992) (citation omitted).

While the record doesn't spell out the terms of the 1987 sale of Jergenson's business (or Jergenson's subsequent purchase of the business in 2018), it seems likely that neither transfer constituted abandonment. "Absent contrary evidence, a business trade name is presumed to pass to its buyer." *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) (citations omitted); *see Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 931 (7th Cir. 1985); 3 *McCarthy on Trademarks and Unfair Competition* § 18:37 (5th ed.) ("When a business is sold as a going concern, trademarks and the good will of the business that the trademarks symbolize are presumed to pass with the sale of the business."). The Lanham Act recognizes the assignment of marks along with the good will of the

7

business in which the mark is used. 15 U.S.C. § 1060(a)(1); *see Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982). The marks passed with the proto pipe business: first from Jergenson to his friend in 1987, and then from the friend back to Jergenson in 2018.[4]

A generic term is "commonly used to name or designate a kind of goods," as opposed to a trademark, which "identifies the source of a product." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996). Genericness is a question of fact, *see TY Inc. v. Softbelly's Inc.*, 353 F.3d 528, 530–31 (7th Cir. 2003), and the defendant bears the burden of showing that a registered trademark is generic. *See id.*; *Chicago Mercantile Exch. Inc. v. ICE Clear US, Inc.*, No. 18 C 1376, 2020 WL 1905760, at *11 (N.D. Ill. April 17, 2020) (gathering cases).

During the period between 1987 and 2018 (while the business was owned by someone other than Jergenson), "knockoffs versions [of the proto pipe] proliferated." [25] at 17. Even if that's true, the existence of knockoffs in the marketplace doesn't mean that plaintiff's marks were being used in such a way as to become the common name for this type of pipe. *See TY Inc.*, 353 F.3d at 531–2 ("The fateful step [of finding a trademark generic] is ordinarily not taken until the trademark has gone so far toward becoming the exclusive descriptor of the product that sellers of competing

---

[4] Even if those transfers did constitute abandonment, Jergenson's subsequent use and registration of the marks in 2018–19 would have restored his rights. *See Indianapolis Colts v. Metro. Baltimore Football Club Ltd. P'Ship.*, 34 F.3d 410, 412–13 (7th Cir. 1994) ("When a mark is abandoned, it returns to the public domain, and is appropriable anew."); 3 *McCarthy on Trademarks and Unfair Competition* § 17:1 (5th ed.) ("[A]bandonment paves the way for future possession and property in any other person who successfully asserts new trademark rights in the designation.").

brands cannot compete effectively without using the name."). The parties agree that the owner of the proto pipe business from 1987 to 2017 continued to make the pipes, *see* [24] at 10; [34] at 6, there's at least some likelihood that plaintiff's marks continued to identify a source, and defendant hasn't shown that Jergenson abandoned the trademarks.

C. **Lawful Use**

To qualify for trademark protection, a mark's use in commerce must be lawful. *See* 15 U.S.C. § 1051(3)(C) (to qualify for registration, a mark must be "in use in commerce"); 37 C.F.R. § 2.69. When a trademark's use in commerce isn't lawful, it can be canceled. *See* 15 U.S.C. § 1064. Some courts recognize unlawful use as a defense to an infringement action. *See S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) (quoting *CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) and citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000)) ("[O]nly *lawful* use in commerce can give rise to trademark priority."); *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1087–88 (11th Cir. 2016) (declining to adopt the unlawful use doctrine); *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 475 (5th Cir. 2021) (same); *American Ass'n of Motorcycle Injury Lawyers, Inc., v. HP3 LAW, LLC, and Howard Piggee, III*, 20 C 4866, 2021 WL 3054799, at *5 (N.D. Ill. July 20, 2021) ("It is uncertain whether unlawful use is a valid defense to trademark infringement in the Seventh Circuit."); 6 *McCarthy on Trademarks and Unfair Competition* § 31:58.50 (5th ed.). Courts that have recognized the defense find that a trademark can't be used with goods that are illegal. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022)

(citing *Zaffina*, 762 F.3d at 926, 930–32); *Advertising to Women, Inc. v. Gianni Versace S.p.A.*, No. 98 C 1553, 2000 WL 1230461, at *5 (N.D. Ill. Aug. 24, 2000) (citing *General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274–75 (T.T.A.B. 1992)) (requiring that unlawful use be more than de minimis); *Dessert Beauty, Inc. v. Fox*, 617 F.Supp.2d 185, 189–94 (S.D.N.Y. 2007) (citation omitted) (requiring that violations supporting the defense be "material"). When recognized, unlawful use is an affirmative defense on which the alleged infringer bears the burden. *See Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 349 (2d Cir. 1999); *FN Herstal SA*, 838 F.3d at 1087–88 (citation omitted).[5]

The Controlled Substances Act defines prohibited drug paraphernalia as "any equipment, product, or material of any kind which is primarily intended or designed for use in...inhaling...into the human body a controlled substance." 21 U.S.C. § 863(d). The objective characteristics of an item can show that it is designed specifically for use with controlled substances, and an item can also be paraphernalia if it is primarily intended for use with illegal drugs, meaning that it is likely to be used with illegal substances by consumers generally. *Posters 'N' Things, Ltd. v. U.S.*, 511 U.S. 513, 518–522 n.11 (1994). The statute sets out factors to consider in determining whether something is paraphernalia, including instructions that accompany the item, advertising, how an item is displayed for sale, and the existence and scope of

---

[5] Some courts require the party asserting the defense to prove it by clear and convincing evidence. *See Dessert Beauty, Inc.*, 617 F.Supp.2d at 190 (citing *General Mills Inc.*, 24 U.S.P.Q.2d at 1274); *FN Herstal SA*, 838 F.3d at 1087 (citing *Satinie Societa in Nome Collettivo di S.A. e M. Usellini v. P.A.B. Produits et Appareils de Beaute*, 209 U.S.P.Q. 958, 965 (T.T.A.B. 1981)).

legitimate usage. 21 U.S.C. § 863(e). Certain types of pipes are paraphernalia. 21 U.S.C. § 863(d). But the Act exempts any item that "in the normal lawful course of business" is "traditionally intended for use with tobacco products, including any pipe, paper, or accessory." 21 U.S.C. § 863(f)(2). Both the definition of paraphernalia and the tobacco exemption are read objectively, and don't depend on the subjective intent of a particular person. *Posters 'N' Things*, 511 U.S. at 520–21.

The parties dispute whether the proto pipe is illegal paraphernalia or an exempted tobacco-related product. *See* [24] at 4–9; [34] at 2–3. The evidence is mixed and insufficiently developed. Jergenson seeks extraordinary relief—a preliminary injunction—and his likelihood of success on the merits of an infringement claim is wrapped up in whether his trademarks are valid and enforceable. I cannot answer those questions, even on a preliminary basis, on this record at least as to Inhale, which has introduced a potential defense.

Jergenson's website linked the development of his business to the legality of marijuana and said that plaintiff sold the business to someone who "labeled [the proto pipe] as a tobacco pipe." [25] at 4–5. There's also evidence that Jergenson specifically designed the pipe with marijuana in mind and that the product is endorsed by marijuana smokers and reviewers of marijuana-related products. *See id.* at 9, 11, 14, 20, 23–24, 29, 31, 33, 35. Jergenson's company advertised the pipe to marijuana smokers through a post on social media. *Id.* at 27.

11

But those facts don't eliminate the possibility that the pipe was traditionally used with tobacco.[6] In his request for trademark registration, Jergenson said that the double-p logo and the words "proto pipe" would be used with goods and services under the U.S. Patent and Trademark Office Class 34, which includes tobacco-related products. [34-2] at 2. Jergenson described the products as "high quality unique smoking pipes containing a tobacco reservoir, cleaning rod, and a unique covered bowl." [10] ¶ 5. At least some of the pipe's advertising shows that it was marketed to tobacco users, [34-1] at 9, and the marks were approved for registration by the U.S. Patent and Trademark Office, categorized under Class 34, and haven't been investigated for misclassification. *See* [10-2]; [34-2] at 3.

The parties shall file supplemental briefs explaining in more detail their positions on how the tobacco exemption applies to the registered marks and Jergenson's use of the marks. The parties should address how the term "pipe" as an exempted item in § 863(f)(2) is squared with the reference to "pipes" as prohibited paraphernalia in § 863(d)(1). The parties should address whether the specific pipes at issue were (at the time of Jergenson's registration or currently) traditionally intended for use with tobacco and identify supporting evidence for their positions. The parties should address who bears the burden on the question of unlawful use at the preliminary injunction stage. Finally, the parties should address whether unlawful use by a trademark holder is a basis to deny a preliminary injunction (or is

---

[6] Similarly, that Jergenson intended his pipe for use with marijuana doesn't decide the issue, since what matters is the traditional use of the pipe, not plaintiff's "subjective intent." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 520–21 (1994).

even a recognized defense to infringement in the Seventh Circuit) when the trademark is registered, presumptively valid, and defendant unquestionably used the trademark without permission. *See* [5-4] at 1–2.

## IV. Conclusion

Defendant's motion to dissolve the temporary restraining order, [24], is denied. Plaintiff's motion for a preliminary injunction, [20], remains under advisement as to defendant Inhale. By September 27, 2022, the parties shall file supplemental briefs addressing the tobacco exemption and unlawful use defense.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 30, 2022