**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PHILLIP JERGENSON,

                    Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE "A",

                    Defendants.

**Case No. 1:22-CV-02040**

**Hon. Judge Manish S. Shah**

**JURY TRIAL DEMANDED**

**DEFENDANT'S SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S
ORDER DATED AUGUST 30, 2022**

Defendant Inhale International Limited ("Defendant") hereby submits this supplemental brief in opposition to the motion for preliminary injunction filed by Plaintiff Phillip Jergenson ("Plaintiff").

## I.   <u>INTRODUCTION</u>

In its Order dated August 30, 2022, this Court ordered the parties to file supplemental briefs related to the Controlled Substance Act, 21 U.S.C. §863 and the unlawful use claim raised by Defendant. In fact, Defendant has raised the unlawful use claim to challenge the validity of Plaintiff's U.S. Trademark Registration No. 5,721,420 for the mark "Proto Pipe" used in connection with smoking pipes under International Class 34. ("Registration").

## II.   <u>PLAINTIFF'S PIPES ARE DRUG PARAPHERNALIA</u>

The Court's Order seeks this brief to discuss the term "pipe" as it appears in the Controlled Substances Act, 21 U.S.C. § 863. See *Order,* p.12-13. The essence of Section 863 is to prohibit the sale and offer for sale of drug paraphernalia. Section 863(d) provides a definition of the term "drug paraphernalia" and Section 863(f)(2) provides an exemption for products "traditionally intended for use with tobacco products".

1

A.    <u>Section 863(d)</u>

Drug paraphernalia are illegal products under 21 U.S.C. §863 which defines it as follows:

> "any…product…which is *primarily intended or designed for use* in…ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter.  It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana…into the human body".  See *21 U.S.C. §863(d).*

The Supreme Court examined the meaning of "drug paraphernalia" in the matter of *Posters 'N' Things v. United States*, 511 U.S. 513 (1994), and considered the phrases (1) "primarily intended for use" and (2) "designed for use".  The Supreme Court concluded that "primarily intended for use" is to be understood objectively and refers generally to an item's likely use.  See *Posters 'N' Things*, 511 U.S. at 521.  The Supreme Court stated that "items 'primarily intended' for use with drugs constitute drug paraphernalia, indicating that it is the likely use of customers generally, not any particular customer, that can render a multiple-use item drug paraphernalia."  See *Id*.  Therefore, items having possible multiple uses may constitute drug paraphernalia for purposes of 21 U.S.C. §863 if the likely use by consumers of the items is to ingest illegal drugs.

B.    <u>Section 863(f)(2)</u>

"[T]he tobacco exemption removes from Section 863's purview any item that is *traditionally intended for use with tobacco*, regardless of any of the other factors in the statute".  See *Lifted Ltd., LLC v. Novelty, Inc*., No. 16-cv-03135, 2021 WL 4480566, at *3 (D. Colo. September 30, 2021).  Section 863(f)(2) states that "[t]his section shall not apply" to products traditionally intended for use with tobacco.  "An item can only be 'traditionally intended for use with' tobacco by reference to history, past practice, and other objective factors."  See *United States v. Dyer*, 750 F. Supp. 1278, 1287 (E.D. Va. 1990).  For example, some courts have held that rolling papers are traditionally and still used to roll tobacco into a cigarette.  Rolling papers have always been used in connection with tobacco, but in recent times, many have been using rolling papers to smoke

2

marijuana in cigarette form.  Courts have held that the traditional use of rolling papers in connection with tobacco exempts such items from the Controlled Substance Act under Section 863(f)(2).  See *Replubic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC,* 262 F.Supp.3d 605, 608.  Similarly, lighters, lighter holders, tampers, and pokers have all been determined by courts to be exempted items for their traditional use in connection with tobacco.  See *Lifted Ltd., LLC. v. Novelty, Inc.,* 2021 WL 4480566, at *3 (D. Col. Sep. 30, 2021).

Thus, items that are exempted under Section 863(f)(2) have been historically and currently used primarily in connection with tobacco.  Such historical use often dates back centuries.  But, in recent times, within the last 50 years, marijuana users have begun using the same items to consume marijuana.  After all, marijuana and tobacco are both herbs.  Thus, marijuana smokers and tobacco smokers make use of the same rolling papers, lighters, lighter holders, tampers, and pokers.  Section 863(f)(2) is the legislature's effort to shield manufacturers of rolling papers, lighters, lighter holders, tampers, pokers, and other items traditionally used by tobacco smokers.  After all, a lack of such exemption would essentially eliminate manufacturers of these items, thus, making the use of tobacco very difficult without the availability of such products.

**C.**   **Analysis of the term "pipe" in both sections**

The term "pipe" appears both in Section 863(d) as an example of drug paraphernalia and Section 863(f)(2) as an example of any item that may be exempted. The fact that the term "pipe" appears in both section is an indication that the legislature recognized that not all pipes are exempt as being "traditionally intended for use" with tobacco.  The legislature understood that unlike rolling papers and lighters, not all smoking pipes are created equal.  Some are exempt but some are drug paraphernalia. Thus, under this statutory construction, an item that is strictly a "pipe" must first be analyzed under the exemption, Section 863(f)(2).  If the exemption does not apply, then it must be analyzed under the drug paraphernalia definition, Section 863(d).

To establish that a pipe is "traditionally intended for use" with tobacco products, the analysis must be based on "history, past practice, and other objective factors".  Some

3

of the objective factors include the objective design or features of the pipe. After all, some pipe designs and features are objectively suited for the consumption of tobacco, while some pipe designs and features are objectively suited for the consumption of marijuana. For example, a wooden pipe with a deep bowl and long curved stem (as shown below) has been historically intended for use and objectively suited to smoke tobacco.



On the other hand, a small glass or metal pipe with small bowl and short stem (as shown below) has been historically intended for use and objectively suited to smoke illegal substances such as marijuana.



Thus, based on "history, past practice, and other objective factors", if Plaintiff's pipe is not established to be "traditionally intended for use" with tobacco, then the exemption cannot apply. It is possible that while Plaintiff's pipe is not "traditionally intended for use" with tobacco, it is still used to consume tobacco and other herbs. In

that case, the exemption does not apply and we must analyze Plaintiff's pipe under the drug paraphernalia definition.

Despite Plaintiff's subjective intent that his pipe be used with tobacco, the evidence presented by Defendant shows that Plaintiff's pipe is also used with marijuana. In fact, there is no evidence of "history, past practice, and other objective factors" to establish that Plaintiff's pipe was "traditionally intended for use" with tobacco. Plaintiff's self-serving declarations and the user or instruction manuals created by Plaintiff may evidence Plaintiff's subjective intent but not the traditionally intended use of Plaintiff's products. After all, the user or instruction manuals created by Plaintiff referencing tobacco may likely evidence Plaintiff's efforts to evade law enforcement instead of the intended use of Plaintiff's pipe.

Thus, at best, Plaintiff's pipe is a multiple-use pipe that can be used to consume tobacco, marijuana, and other herbs. *Posters 'N' Things* held that items having multiple uses may constitute drug paraphernalia for purposes of 21 U.S.C. §863 if the likely use by consumers of the items is for use with illegal drugs. Therefore, the analysis in this case is based on the likely use by consumers of Plaintiff's pipe. It is not a subjective analysis based on what Plaintiff intends it to be used with. Instead, the analysis is strictly based on how Plaintiff's pipe is likely used by consumers.

In the present case, the social media posts, newspaper feature, product reviews, and Plaintiff's own website evidence that the likely use of Plaintiff's pipe by consumers is to inhale or ingest marijuana. See *Order,* p.3. Even more, as this Court recognized, Plaintiff has described the development of his pipe to be tied to marijuana. See *Order,* p.3. Jergenson described his business in the 1980s as "paraphernalia manufacturing". See *Id.* In fact, other than Plaintiff's self-serving declaration and other subjective evidence, Plaintiff fails to present any evidence that Plaintiff's pipe is traditionally used to smoke tobacco or that Plaintiff's pipe is likely used by consumers to smoke tobacco.

As such, the evidence presented by Defendant supports the claim that Plaintiff's pipe is drug paraphernalia.

III.    **PLAINTIFF FAILED TO USE TRADEMARK IN COMMERCE**

The Court's Order seeks this brief to discuss whether unlawful use of a trademark is a recognized defense in the Seventh Circuit. See *Order,* p.12-13. In its Order, the Court references the case of *American Ass'n of Motorcycle Injury Lawyers, Inc. v. HP3 LAW, LLC,* 20 C 4866, 2021 WL 3054799, at *5 (N.D. Ill. July 20, 2021) which held that "[i]t is uncertain whether unlawful use is a valid defense to trademark infringement in the Seventh Circuit." See *Order,* p.9. However, the present case does not raise the same unlawful use defense addressed in *American Ass'n.* Instead, in this case, Defendant challenges the validity of the Registration on grounds that the trademark was never "used in commerce" as required by the Lanham Act.

In *American Ass'n*, the defendant alleged that the plaintiff was using the mark in connection with a for-profit client referral service in violation of Illinois state law. The court pointed out that such unlawful use is not among the enumerated defenses to trademark infringement set forth in the Lanham Act, 15 U.S.C. 1115(b). After all, *American Ass'n* dealt with the violation of state rather than federal law. The Lanham Act is a federal statute. Essentially, *American Ass'n* calls into question whether use of a trademark in violation of state law, rather than federal law, is a proper defense for trademark infringement.

The present case, however, is substantially different because Plaintiff's use of the trademark is not only in violation of federal law rather than state law, but primarily because Plaintiff's use of the trademark cannot meet the "use in commerce" requirement of the Lanham Act.

Under Section 1(a) of the Lanham Act (15 U.S.C. §1051), a trademark may not be registered unless it is "used in commerce". Section 45 of the Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade." In addition, "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." See *Id.* "A valid [trademark] application cannot be filed at all for registration of a mark without 'lawful use in commerce…'" See *Gray v. Daffy Dan's Bargaintown,* 3 USPQ2d 1306, 1308 (Fed. Cir. 1987). The Trademark Trial and Appeal Board ("Board")

also has "consistently held that, to qualify for a federal…registration, the use of a mark in commerce must be 'lawful'." See *In re PharmaCann, LLC,* 123 USPQ2d 1122, 1123-24 (TTAB 2017) (quoting *In re JJ206, LLC,* 120 USPQ2d 1568, 1569 (TTAB 2016) and *In re Brown,* 119 USPQ2d 1350, 1351 (TTAB 2016) (affirming unlawful use refusals to register marks for marijuana-related products or services)). See also *Coahoma Chem. Co., Inc. v. Smith,* 113 USPQ 413, 418 (Comm'r Pat. 1957), affirmed on other grounds, 121 USPQ 215 (CCPA 1959) ("[U]se of a mark in connection with unlawful shipments in interstate commerce is not use of a mark in commerce which the Patent and Trademark Office may recognize.").

Thus, it is well-established that for a mark to be eligible for federal registration, "any goods…for which the mark is used must not be illegal under federal law." See *PharmaCann,* 123 USPQ2d at 1124 (quoting *JJ206,* 120 USPQ2d at 1569 and *Brown,* 119 USPQ2d at 1351). After all, courts have "held that only lawful use in commerce can give rise to trademark priority". See *S. California Darts Ass'n v. Zaffina,* 762 F.3d 921, 931 (9th Cir. 2014). See also *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000). See also *In Re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. July 14, 2016) ("We have consistently held that, to qualify for a federal service mark registration, the use of a mark in commerce must be lawful."). Thus, where a trademark's use in commerce is not lawful, the mark may be canceled. See, e.g., *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 634 (9th Cir. 2007) (cancelation of trademark was proper where product was mislabeled in violation of federal requirements).

In the present case, Plaintiff filed a trademark application expressly representing to the Patent and Trademark Office ("PTO") that his first use in commerce of the trademark was on July 12, 1976, in connection with smoking pipes under International Class 34. See *Registration.* Pursuant to the Nice Agreement, International Class 34 is reserved for "mainly tobacco and articles used for smoking [tobacco]". See *Nice Agreement, Eleventh Edition, version 2022 (NCL 11-2022).* Essentially, Plaintiff attained the Registration based on his express representation to the PTO that he used in commerce the trademark

in connection with pipes used to smoke tobacco.

However, the evidence shows that Plaintiff has designed and sold his pipes for use in connection with marijuana rather than tobacco.  In fact, in its Order this Court held as follows:

> "But a post on social media showed that the brand was also marketed to marijuana smokers, and social media posts, a newspaper feature, and reviews showed that some marijuana users endorsed the proto pipe.  On Proto Pipe LLC's website, Jergenson described the development of the proto pipe business as tied to the legality of marijuana.  Jergenson described his business in the 1980s as 'paraphernalia manufacturing' and wrote that to avoid the war on drugs he 'turned the business over to a friend who did not smoke pot and labeled [the proto pipe] as a tobacco pipe'."  See *Order,* p.3.

Therefore, the evidence refutes Plaintiff's representation to the PTO that he used the trademark in commerce in connection with tobacco pipes since 1976.  In fact, Defendant alleges that Plaintiff's trademark has always been used in connection with drug paraphernalia, smoking pipes primarily used to smoke marijuana.  Assuming, *arguendo,* that Plaintiff has used his trademark in connection with drug paraphernalia rather than tobacco pipes, then Plaintiff not only attained the Registration fraudulently by misrepresenting the PTO, but also Plaintiff's Registration is invalid because Plaintiff fails to meet the "use in commerce" requirement of the Lanham Act.

21 U.S.C. §863 expressly prohibits the sale or offer for sale of drug paraphernalia.  Essentially, the trade of drug paraphernalia is federally illegal, thus, it is not commerce that is lawfully regulated by Congress.  Use of a trademark in connection with the sale or offer for sale of drug paraphernalia does not meet the "use in commerce" requirement of Section 1(a) of the Lanham Act (15 U.S.C. §1051).  In other words, Plaintiff's failure to "use [his trademark] in commerce" as required by the Lanham Act, invalidates the Registration in full as a matter of law.  See *Gray v. Daffy Dan's Bargaintown,* 3 USPQ2d 1306, 1308 (Fed. Cir. 1987) ("A valid [trademark] application cannot be filed at all for registration of a mark without 'lawful use in commerce…'").

8

Thus, the unlawful use of the trademark in this case specifically relates to the validity of the Registration because it precludes Plaintiff from meeting the "use in commerce" requirement of the Lanham Act. In the other hand, *American Ass'n* dealt with a trademark that was used in violation of state law, not federal law. Thus, the trademark registration in *American Ass'n* was valid because the use of the trademark did comply with the "use in commerce" requirement of the Lanham Act. Consequently, the court in *American Ass'n* found that the unlawful use in that case was akin to the common law doctrine of unclean hands, a defense that may not be recognized in the Seventh Circuit.

However, in the present case, Plaintiff's unlawful use of his trademark is not akin to the doctrine of unclean hands. Instead, Plaintiff's unlawful use of his trademark relates to the primary element of his trademark infringement claim under the Lanham Act which requires proof that Plaintiff's trademark is protectable. See *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 638 (7th Cir. 2001). Plaintiff claims protection for its trademark under the Lanham Act. But, assuming *arguendo*, that Plaintiff's unlawful use of the trademark does not meet the "use in commerce" requirement of the Lanham Act, then Plaintiff's trademark is not protectable and Plaintiff's claim lacks merit as matter of law. Essentially, the unlawful use claim asserted in this case is not necessarily being raised as a defense to infringement akin to the doctrine of unclean hands as in *American Ass'n.* Instead, the unlawful use claim in this case is raised to challenge the validity of Plaintiff's Registration under the Lanham Act. In addition, the unlawful use claim in this case is raised to allege that Plaintiff obtained the Registration from the PTO fraudulently. Thus, the unlawful use defense raised in this case is allowable under the Lanham Act, 15 U.S.C. §1115, is recognized by the Seventh Circuit, and is a proper basis to deny a preliminary injunction.

## IV. **PLAINTIFF BEARS THE BURDEN OF PROOF**

The Court's Order seeks this brief to discuss who bears the burden of proof on the question of unlawful use at the preliminary injunction stage. See *Order,* p.12-13. To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will

suffer "irreparable harm"; (2) "traditional legal remedies would be inadequate"; and (3) it has some likelihood of prevailing on the merits of its claims. See *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). The party seeking a preliminary injunction bears the burden of showing that it is warranted. See *Id*. The unlawful use claim asserted by Defendant directly challenges Plaintiff's argument for all three (3) elements required for a preliminary injunction.

First, Plaintiff bears the burden to prove that without relief, he will suffer irreparable harm. In order to establish that Plaintiff will suffer irreparable harm, he must first establish that he will suffer harm that is protected against by law. In a trademark infringement matter, such can be proven by establishing that a party has a valid and enforceable trademark which is protected by law. In the present case, Plaintiff presents the Registration which establishes a prima facie presumption that Plaintiff's trademark is valid and enforceable. However, that presumption can be rebutted by evidence that disputes or rebuts the prima facie case. See *Mid America Title Co. v. Kirk,* 59 F.3d 719, 721 (7th Cir. 1995). See also *Pickett v. Prince,* 52 F.Supp.2d 893, 901 (N.D. Ill, Eastern Division June 18, 1999) ("Plaintiff's copyright registration will not be sufficient to demonstrate a valid copyright in light of contrary evidence.").

In the present case, the evidence presented by Defendant refutes or rebuts the presumption that Plaintiff's registered trademark is valid and enforceable. Therefore, the Registration is not sufficient to demonstrate a valid trademark in light of the contrary evidence. More specifically, Defendant has refuted or rebutted the presumption by showing that Plaintiff uses his trademark in connection with a smoking pipe that is likely used by consumers to ingest marijuana rather than tobacco. Thus, in light of Defendant's rebutting evidence, Plaintiff now has the burden to prove that he has a valid and protectable trademark beyond the prima facie presumption established by the Registration. Without showing that he has a protectable trademark, Plaintiff is unable to show that he will suffer a harm that is protected against by law.

Second, Plaintiff bears the burden to prove that legal remedies would be inadequate. But, in light of Defendant's evidence that Plaintiff has not used his

10

trademark in commerce as required by the Lanham Act, as discussed above, Plaintiff has the burden to prove that he has a protectable trademark that entitles him to a legal remedy. After all, Plaintiff sells and offers for sale drug paraphernalia, smoking pipes for the consumption of marijuana. Such is expressly forbidden under the Controlled Substances Act, 21 U.S.C. § 863. In fact, Section 863 of the Controlled Substances Act expressly imposes a penalty of imprisonment for not more than 3 years to anyone selling or offering to sell drug paraphernalia. Thus, in light of Defendant's evidence, Plaintiff is not entitled to any legal remedy in this case.

Third, Plaintiff bears the burden to prove some likelihood of success in this action. The primary element to prove Plaintiff's trademark infringement claim under the Lanham Act requires proof that Plaintiff's trademark is protectable. See *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 638 (7th Cir. 2001). But, as discussed above, the presumption established by the Registration that Plaintiff's trademark is protectable, is rebutted or refuted by Defendant's evidence that Plaintiff has not used his trademark in commerce as required by the Lanham Act. Thus, in light of Defendant's evidence, Plaintiff bears the burden to present evidence, beyond the mere Registration, that his trademark is protectable such that he has some likelihood of success in this action.

Based on the above, Plaintiff bears the burden on the question of unlawful use at the preliminary injunction stage.

## V.    DEFENDANT DID NOT USE PLAINTIFF'S TRADEMARK

In its Order, this Court erroneously states that "defendant unquestionably used the trademark without permission". See *Order,* p.13. However, the evidence presented by Plaintiff in this case merely shows a product listing for Plaintiff's product published on the website located at www.alibaba.com. It is very important to note that said website is owned and managed by Alibaba Group, a company headquartered and operating under the laws of China. Even more important, it must be noted that Defendant is headquartered and operating under the laws of Hong Kong. Thus, when Defendant posted the product listing on Alibaba, it did so in Hong Kong. Then Alibaba elected to publish the product listing throughout the world, including the United States. Thus, there

11

is no evidence presented by Plaintiff that Defendant used the trademark within the United States.  If anything, the trademark was published, thus, used within the United States by Alibaba, not Defendant.  After all, there is no evidence that Defendant has any control over where in the world its listings are published by Alibaba.  Naturally, if Defendant intended to sell its products only in Hong Kong or China, it would post its product listings on Alibaba, a Chinese company, rather than Amazon or eBay, US companies.  In fact, that is what happened in this case.  There is no evidence that Defendant sold any products in the United States.

But most important, with a preliminary injunction as requested by Plaintiff, this Court would block Defendant from selling its products outside the United States.  In other words, if this Court enjoins Defendant from posting its product listings on Alibaba, this Court will extend its reach beyond the borders of the United States and enjoin Defendant from using the trademark-at-issue in countries or jurisdiction in which Plaintiff have no legal rights.  Such would be an overreach of the Court's authority and would irreparably harm and prejudice Defendant.

## VI.     CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court to deny Plaintiff's motion for preliminary injunction.

DATED:  September 27, 2022

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR
INHALE INTERNATIONAL LIMITED.

12