UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILLIP JERGENSON, | |
| Plaintiff, | |
| | No. 22 CV 2040 |
| v. | |
| | Judge Manish S. Shah |
| INHALE INTERNATIONAL LIMITED, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Phillip Jergenson alleges that internet sellers infringed on his trademarks and sold counterfeit products. He brings claims for trademark infringement, counterfeiting, false advertising, conspiracy, and violation of the Illinois Uniform Deceptive Trade Practices Act, and moves for a preliminary injunction. I granted the injunction against the other defendants, but not against defendant Inhale International Limited, which appeared and opposes the motion. Inhale filed an answer seeking declaratory judgments of non-infringement and invalidity, and alleging fraud in the procurement of the marks and wrongful seizure. Jergenson moves to dismiss the counterclaims. For the reasons that follow, both the motion for a preliminary injunction and the motion to dismiss are granted.

I.    Standard of Review

A preliminary injunction is "an extraordinary remedy never awarded as of right." See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation

omitted). A plaintiff seeking a preliminary injunction must show that he will suffer irreparable harm, that traditional legal remedies would be inadequate, and that he has some likelihood of prevailing on the merits of his claims. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If a plaintiff makes that initial showing, the court weighs the harm the denial of the preliminary injunction would cause against the harm to the defendant if the court grants the injunction. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), a complaint (or in this case an answer asserting counterclaims) must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The answer must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the claimant's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)).

A party alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b); *see Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations omitted) (Claims that sound in fraud—meaning premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 446–

47 (7th Cir. 2011) (citation omitted) (Rule 9(b) applies to "allegations of fraud, not claims of fraud."). They must describe the "who, what, when, where, and how" of the fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

## II.  Facts

Beginning in 1971, Jergenson sold smoking pipes through Proto Pipe LLC, a California limited liability company. [10] ¶¶ 5–6; [34-3] at 2–4.[1] Jergenson applied for trademark registration for the words "Proto Pipe" and for a "PP" logo in August 2018 and April 2019. [34-1] at 2; [34-2]. In his application, Jergenson told the Patent and Trademark Office that he owned the marks in a sole proprietorship, that the marks were first used in 1976, and categorized his products as International Class 34, smoking pipes. [34-1] at 2–3.[2] The registrations were approved on April 9 and October 29, 2019, and the PTO categorized the marks into Class 34. *See* [10-2]. According to the answer, however, Jergenson did not use the marks in a way that would establish trademark rights, [26] at 9, and stopped use of the mark for decades before attempting to reestablish use. *Id*. In attaining the marks, Jergenson allegedly

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the amended complaint, [10], an exhibit filed with the complaint, [10-2], the answer to the amended complaint, [26], and from the exhibits filed with the parties' briefs. [25]; [34-1]; [34-3].

[2] *See* Nice Classification, Eleventh Edition § 34, version 2022 (NCL 11-2022), United States Patent and Trademark Office, https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-current-edition-version-general-remarks (last visited Jan. 4, 2023).

lied to the PTO about his use of the pipes because the products were actually configured and intended to be drug paraphernalia. *Id.* at 10.

Jergenson advertised the proto pipe as a "Patented Tobacco Smoking System." [34-1] at 9, and the product's instructions were aimed at tobacco users. *See* [51-1]. But there's an allegation that Jergenson's marks were used in conjunction with drug paraphernalia prohibited by federal law, [26] at 8, and that Jergenson designed, manufactured, and sold the pipes intending that the products would be used to consume marijuana and other illegal substances. *Id.* at 8–9. The brand was marketed to marijuana smokers, *see* [25] at 27, and some marijuana users endorsed the proto pipe. *See id.* at 11, 23–24, 29, 31, 33, 35. Proto Pipe LLC's website linked the development of the proto pipe business and the legality of marijuana. *Id.* at 4; [26] at 9; Phil Jergenson, *About Us*, Proto Pipe, https://protopipellc.com/pages/about-us (last visited Jan. 4, 2023).

A *Los Angeles Times* feature said that the proto pipe was known as "the Swiss Army knife of pot pipes." [26] at 9; [25] at 11; Adam Tschorn, *I needed answers. My hunt to find the backstory of the perfect pot pipe.*, Los Angeles Times (Oct. 27, 2021, 11:01 a.m.), https://www.latimes.com/lifestyle/story/2021-10-27/in-praise-of-the-proto-pipe-a-practically-perfect-piece-of-pot-paraphernalia. The pipe was designed to include the tools needed to smoke marijuana, including a "removable poker, a place to stow some weed and a permanent screen." [25] at 14. The article noted that in 1987 Jergenson sold his pipe-making business. *See id.* at 16. The new owner of the business continued to make proto pipes for three decades, but during that period knockoffs

proliferated and the proto pipe brand disappeared from the market. *Id.* at 16–17. Jergenson described his business in the 1980s as "paraphernalia manufactur[ing]," and wrote that to avoid the war on drugs he "turned the business over to a friend who did not smoke pot and labeled [the proto pipe] as a tobacco pipe." [25] at 5. If marijuana legalization became imminent, the new owner and Jergenson agreed that Jergenson could return to the business. *Id.* Jergenson assumed control of the proto pipe brand for a second time in 2018. *Id.* at 17.

Inhale and other defendants ran internet stores that appeared to be selling genuine proto pipe products. [10] ¶ 13. But they actually sold inferior imitations branded with the trademarks. *Id.* Allegedly working together, defendants used Jergenson's marks to advertise and sell counterfeit items, causing confusion in the market despite knowing that Jergenson owned the trademarks. *Id.* ¶¶ 17–21, 23.

I issued an ex parte temporary restraining order enjoining all of the defendants from using Jergenson's trademarks, passing off counterfeit products as genuine, or transferring assets. [16]. There's an allegation that in seeking the order, Jergenson falsely represented to the court that his trademarks were valid and knew at the time that his products weren't protected under the Lanham Act. [26] at 10–11. By seeking the TRO, Jergenson caused Inhale to lose profits and suffer damage to its business, reputation, and goodwill in the marketplace. *Id.*

### III.  Analysis

### A.  Preliminary Injunction

#### 1.  *Likelihood of Success on the Merits*

Jergenson bases his request for preliminary relief on claims for statutory trademark infringement, counterfeiting, and false designation of origin. *See* [20-1] at 6–8. To prevail on these claims, Jergenson must prove two elements: that his mark was protected under the Lanham Act and that the defendant's unauthorized use of the mark was likely to cause confusion. *See* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); *Segal v. Geisa NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) (citation omitted).

Jergenson has two registered trademarks, [10-2], and defendant doesn't dispute that Inhale's use of the words "proto pipe" on its products (which appear to be identical to those offered by Jergenson) was likely to cause confusion in the market. *See* [5-4] at 1–2; *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (citing *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 642 (7th Cir. 2001)). The only remaining issue is whether Jergenson's marks were protected by the Lanham Act. *See* [42] at 12–13.[3]

---

[3] In an earlier opinion, I found that Inhale had infringed on the trademarks, that Jergenson was a proper plaintiff to bring an infringement action, and that Jergenson had not abandoned the marks. *See* [42] at 4 n.3, 5–9. The parties were instructed to file supplemental briefs answering four questions about the application of the unlawful-use doctrine to the facts of this case. *Id.* at 12–13. In its supplemental brief, Inhale for the first time argues that it didn't use Jergenson's marks because the products in question were listed on a third party's website. *See* [52] at 11–12. Defendant's argument exceeds the scope of the requested

To gain trademark protection, a registrant must represent to the Patent and Trademark Office that the mark they want to protect is in use in commerce. 15 U.S.C. § 1051(d)(1). The Trademark Trial and Appeal Board has interpreted that requirement to mean that a mark is in use in *lawful* commerce. *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086 (11th Cir. 2016); 6 *McCarthy on Trademarks and Unfair Competition* § 31:58.50 (5th ed.). The issue of lawful use appears before the TTAB when a party opposes a pending trademark registration or wants to cancel a mark. *See, e.g.*, *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270 (T.T.A.B. 1992); *Satinie Societa in Nome Collettivo di S.A. e M. Usellini v. P.A.B. Produits et Appareils de Beaute*, 209 U.S.P.Q. 958 (T.T.A.B. 1981). The TTAB will find a use unlawful if the issue of compliance has been previously determined by a court or government agency or when there has been a per se violation of a statute regulating the sale of a party's goods. *See Armida Winery Inc. v. The Cuban, LLC*, Cancellation No. 92065105, 2018 WL 3689355, at *13 (T.T.A.B Aug. 1, 2018).

Some federal courts have adopted a version of the unlawful-use doctrine as an affirmative defense to claims of infringement. *See CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000). Courts that recognize the defense hold that a trademark can't be used with goods that are illegal. *See AK*

---

supplemental briefing, and because it wasn't made in Inhale's initial response to the motion, *see* [24], is forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003)) (a party must raise an argument in its initial response to a motion).

*Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022) (citations omitted); *Advert. to Women, Inc. v. Gianni Versace S.p.A.*, No. 98 C 1553, 2000 WL 1230461, at *5 (N.D. Ill. Aug. 24, 2000) (citing *Gen. Mills Inc.*, 24 U.S.P.Q.2d at 1274–75) (requiring that unlawful use be more than de minimis); *Dessert Beauty, Inc. v. Fox*, 617 F.Supp.2d 185, 189–94 (S.D.N.Y. 2007) (citation omitted) (requiring that violations supporting the defense be "material"). When recognized, unlawful use is an affirmative defense on which the alleged infringer bears the burden. *See Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 349 (2d Cir. 1999); *FN Herstal SA*, 838 F.3d at 1087–88 (citation omitted).[4] But not all courts recognize the doctrine. *See FN Herstal SA*, 838 F.3d at 1087–88; *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 475 (5th Cir. 2021); *Moke America LLC v. American Custom Golf Cars, Inc.*, Civil No. 3:20cv400 (DJN), 2022 WL 17477062, at *5–9 (E.D. Va. Dec. 6, 2022); *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, Case No. 1:16-cv-00949, 2020 WL 10728951, at *5–6 (N.D. Ga. Jan. 10, 2020) (citations omitted).

The Seventh Circuit has not adopted unlawful use as a defense to an infringement claim, and I decline to do so here. The rule makes sense in the different, narrower context of TTAB registration proceedings, but not in an infringement lawsuit. The TTAB applies the lawfulness requirement to decide questions specific to the registration of a mark. But whether a mark should be registered is a different

---

[4] Some courts require the party asserting the defense to prove it by clear and convincing evidence. *See Dessert Beauty, Inc.*, 617 F.Supp.2d at 190 (citing *General Mills Inc.*, 24 U.S.P.Q.2d at 1274); *FN Herstal SA*, 838 F.3d at 1087 (citing *Satine Societa*, 209 U.S.P.Q. at 965).

inquiry than that presented by an infringement action, which is meant to protect consumer confidence and registrants' goodwill in the marketplace. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001) (citation omitted). The review of the lawfulness of a use in commerce is for an earlier stage in the process, and trademark holders should not be required to repeatedly litigate the question of use to enforce their rights.

Even if the doctrine applies in infringement actions,[5] it's likely that Jergenson's use of the marks is lawful. The Controlled Substances Act defines prohibited drug paraphernalia as "any equipment, product, or material of any kind which is primarily intended or designed for use in...inhaling...into the human body a controlled substance." 21 U.S.C. § 863(d). To decide whether an item is paraphernalia, courts consider the objective characteristics of an item and whether it is primarily intended for use with illegal drugs, meaning likely to be used with illegal substances by consumers generally. *Posters 'N' Things, Ltd. v. U.S.*, 511 U.S. 513,

---

[5] Inhale argues that this case is distinguishable from others involving the doctrine because unlawful use is asserted here not as a defense to infringement but rather to challenge the validity of Jergenson's marks. *See* [52] at 9. I fail to see the difference that Inhale identifies, since showing that a mark is invalid is how the defense works. *See S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014). Perhaps defendant is pointing out the fact that, regardless of the application of any unlawful-use defense, success on Jergenson's claims requires a showing that his marks are protected. *See* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); *Segal v. Geisa NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) (citation omitted). But Jergenson's registered trademarks are entitled to a presumption of validity, and evidence of unlawful use could only be used to show invalidity, as with other affirmative defenses. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007); 15 U.S.C. § 1115(b).

518–522 n.11 (1994).[6] Certain pipes are paraphernalia. 21 U.S.C. § 863(d). But there's an exemption for any item that "in the normal lawful course of business" is "traditionally intended for use with tobacco products, including any pipe, paper, or accessory." 21 U.S.C. § 863(f)(2). Courts consider history, past practice, and other objective factors in determining whether an item qualifies for the tobacco exemption. *See United States v. Dyer*, 750 F.Supp. 1278, 1287 (E.D. Va. 1990); *Lifted Ltd., LLC v. Novelty Inc.*, Civil Action No. 16-cv-03135-PAB-GPG, 2021 WL 4480566, at *2 (D. Colo. Sept. 30, 2021); *United States v. Assorted Drug Paraphernalia Valued at $29,627.07*, Civ. No. 18-143 GJF/SMV, 2018 WL 6630524, at *10 (D.N.M. Dec. 19, 2018). Both the definition of paraphernalia and the tobacco exemption are read objectively, and don't depend on the subjective intent of a particular person. *Posters 'N' Things*, 511 U.S. at 519–21.

There's no evidence that a court or government agency has found that the proto pipe is illegal paraphernalia, or that Jergenson's sale of the pipe is a per se violation of the Controlled Substances Act. *See Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q.2d 2045, 2047 (T.T.A.B. 1988); *Armida Winery Inc.*, 2018 WL 3689355, at *13 (citation omitted); 21 U.S.C. § 863(d). There is evidence that Jergenson intended the pipe to be used with marijuana, that the pipe was actually used by marijuana smokers, and that Jergenson's company advertised to marijuana smokers. *See* [25] at 4–5, 9, 11, 14, 20, 23–24, 27, 29, 31, 33, 35. But Jergenson told the U.S. Patent and

---

[6] Factors to consider in determining whether something is paraphernalia include: instructions that accompany the item, advertising, how an item is displayed for sale, and the existence and scope of legitimate usage. 21 U.S.C. § 863(e).

Trademark Office that he used the marks in relation to tobacco, [34-1] at 2, plaintiff described the products as "high quality unique smoking pipes containing a tobacco reservoir, cleaning rod, and a unique covered bowl," [10] ¶ 5, and at least some of the pipe's advertising and instructions shows that it was aimed at tobacco users. [34-1] at 9; [51-1]. The U.S. Patent and Trademark Office approved the marks for registration, categorized them under Class 34, and hasn't investigated the marks for misclassification. *See* [10-2]; [34-2] at 3, 5. Research cited by plaintiff shows that pipes have been used to smoke tobacco for hundreds of years and that the use of metal pipes for smoking tobacco is also well established. *See* [49] at 3–4 (citing William A. Turnbaugh, *Native North American Smoking Pipes*, 33 Archeology 1, 20 (Jan./Feb. 1980) and Amsterdam Pipe Museum, *Unexpected Materials*, https://pipemuseum.nl/en/onverwachte-materialen (last visited Jan. 5, 2023)). Inhale cites no evidence for the proposition that a small metal pipe with a small bowl and short stem is historically associated with illegal substances. *See* [52] at 4.

On this record, the tobacco exemption likely applies. Inhale sold counterfeit products, *see* [5-4] at 1–2; [5-2] ¶ 9; [42] at 4 n.3, the unlawful-use doctrine doesn't apply, and there's at least some likelihood that Jergenson will succeed on the merits of his claims for infringement, counterfeiting, and false designation of origin against

Inhale. *See* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A); *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020).

### 2. *Irreparable Injury, Balance of Equities, and Public Interest*

Jergenson says that there is a risk that Inhale's counterfeit products will damage his products' reputation and the goodwill his marks enjoy in the marketplace. [20-1] at 9. Given that Inhale sold what appeared to be identical products to those offered by Jergenson, these harms are likely irreparable. *See Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) and 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2002 & April 2021 Supp.)) ("[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm."); *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citations omitted) ("[D]amage to a trademark holder's goodwill can constitute irreparable injury."). While Inhale uses Jergenson's marks, plaintiff has no control over the quality of products Inhale offers and no way to maintain his trademarks' position in the market. *See Cook*, 272 F.3d at 432 (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)). Plaintiff has shown irreparable harm.

The balance of harms and public interest favor an injunction. The injunction Jergenson wants would stop Inhale from making or selling infringing or counterfeit products, restrain defendant from moving assets outside the jurisdiction of the court, and expedite discovery. *See* [20-1]. Inhale has no legitimate interest in using

12

Jergenson's trademarks, which means the balance of harms favors plaintiff. A preliminary injunction will also serve the public interest by removing counterfeit goods from the market, reducing consumer confusion, and promoting fair competition. *See Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 825 (7th Cir. 2016). But a prejudgment asset restraint is an extraordinary measure that is appropriate when an equitable remedy of an accounting would be jeopardized without a restraint; it is not a device to be employed simply to secure a pot of money for later recovery of damages. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330–33 (1999). Jergenson has not established that an accounting is likely to be pursued or that an asset restraint is necessary to provide an accounting. Inhale is participating in the litigation and discovery of records can account for profits without the intrusiveness of an asset restraint. Similarly, because Inhale is participating in the case and ordinary discovery is underway, there is no need for expedited discovery.

### B. Motion to Dismiss

#### 1. Declaratory Judgments for Non-Infringement and Invalidity

When a federal court has jurisdiction over an actual controversy, it "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Declaratory judgments are meant to clarify the legal relations at issue, affording the parties "relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (quoting Borchard, *Declaratory Judgments* 299

(2d ed. 1941)). When a substantive suit has already been filed and will resolve the same issues, however, a declaratory judgment doesn't serve a useful purpose, and can be dismissed as duplicative. *See id.* at 750 (citations omitted); *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F.Supp.3d 1034, 1038 (N.D. Ill. 2014) (citing *Intercon Solutions, Inc. v. Basel Action Network*, 969 F.Supp.2d 1026, 1065 (N.D. Ill. 2013) and *Nielsen Co. (US), LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 WL 221838, at *5 (N.D. Ill. Jan. 24, 2011)). Federal courts have "substantial discretion" in deciding whether to declare the rights of litigants under the Declaratory Judgment Act. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (quoting *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018)).

In this case, Inhale wants a declaratory judgment that it didn't infringe on Jergenson's trademarks and a second judgment that the marks are invalid. *See* [26] at 8–10. These counterclaims are duplicative of Jergenson's infringement claim and Inhale's non-infringement and invalidity affirmative defenses. *See* [10] ¶¶ 24–30; [26] at 5. Defending the infringement claim, Inhale may argue that Jergenson lacks standing to sue for infringement and that Jergenson's trademarks are invalid.[7] The counterclaims raise the same facts and legal issues as are asserted by Inhale's affirmative defenses,[8] and do not serve a useful purpose. *See Tempco*, 819 F.2d at 749

---

[7] While Jergenson has standing for purposes of the motion for a preliminary injunction, *see* [42] at 5–6, that finding was preliminary and did not decide the issue on the merits. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993) (citations omitted) (Decisions made on a motion for a preliminary injunction are "only preliminary and subject to revision at any time.").

[8] The cases cited by defendant are distinguishable, because none considered a declaratory judgment action for invalidity that mirrored an invalidity affirmative defense. *See Castaline*

(affirming a district court's dismissal of a claim for a declaratory judgment of non-infringement when an infringement suit was promptly filed); *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006) (gathering cases) ("District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses.").

Counterclaims one and two are dismissed without prejudice.

### 2. *Fraud*

An applicant for trademark registration fraudulently procures a mark when he "knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); *see MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016); 15 U.S.C. § 1115(b)(1). To allege fraudulent procurement, Inhale must meet the particularity requirements of Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). Inhale must allege the "who, what, when, where, and how" of an alleged fraud. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)).

---

*v. Aaron Mueller Arts*, No. C 09-02543 CRB, 2010 WL 583944, at *2 (N.D. Cal. Feb. 16, 2010); *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174–75 (6th Cir. 1942); *Digital Envoy, Inc. v. Google, Inc.*, No. C 04 01497 RS, 2006 WL 824412, at *2 (N.D. Cal. Mar. 28, 2006). The reasoning of *Castaline* and *Dominion* is also unpersuasive because, with Inhale's answer filed, Jergenson cannot unilaterally dismiss the action. *See* Fed. R. Civ. P. 41(a)(1)(A).

Inhale fails to allege the "what" of the alleged fraud. The answer says that Jergenson "falsely represented to the USPTO that [he] was using in commerce the Trademarks in connection with standard smoking pipes." [26] at 10. An initial problem with these allegations is that defendant doesn't claim that Jergenson intended to deceive the PTO. There's an allegation that Jergenson's pipes were "configured and intended to be used as drug paraphernalia," *id.*, but even if that's true, it wouldn't necessarily mean that Jergenson intended to deceive the PTO about his use in commerce of the trademarks. *See Posters 'N' Things, Ltd. v. U.S.*, 511 U.S. 513, 520–21 (1994) (Jergenson's intent isn't relevant to whether the pipes are paraphernalia or fall under the tobacco exemption). Inhale attempts to amend its answer by way of its response brief, *see* [43] at 3–4, but that's not permitted. *See Pirelli*, 631 F.3d at 448. Fraud is a serious matter, *see United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 740 (7th Cir. 2021), and more was required to satisfy Rule 9(b)'s heightened pleading standard.

Counterclaim three is dismissed without prejudice.

### 3. Wrongful Seizure

A party may obtain an ex parte seizure order of goods that violate the Lanham Act. 15 U.S.C. § 1116(d)(1)(A). If the seizure is wrongful, a person damaged as a result may recover against the applicant who sought the seizure. 15 U.S.C. 1116(d)(11); *General Elec. Co. v. Speicher*, 877 F.2d 531, 537–38 (7th Cir. 1989). A wrongful seizure isn't defined by the statute, and instead turns on a case-by-case assessment. *See Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 530 (5th Cir. 2002) (citing

16

130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984) (Joint Statement on Trademark Counterfeiting Legislation)). Courts generally find seizures wrongful when (1) the applicant sought the seizure in bad faith, (2) the goods seized were legitimate (and not counterfeit), or (3) the seizure was executed improperly. *See id.* (citation omitted); *Slazenger v. Stoller*, No. 88 C 3722, 1988 WL 87036, at *1–2 (N.D. Ill. Aug. 15, 1988); *Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, 760 F.Supp.2d 384, 395–96 (S.D.N.Y. 2011) (citations omitted); *North Atl. Operating Co. v. J&L D Sunset Wholesale & Tobacco*, Case No. ED CV 14-1947 DMG (SPx), 2015 WL 12781601, at *2–3 (C.D. Cal. April 2, 2015).

Jergenson sought (and I granted) an ex parte temporary restraining order, which froze assets connected to defendants and restricted defendants from using plaintiff's marks. [16] at 2–7. The answer says that Inhale was restrained and damaged by the order. [26] at 10–11. But there is no allegation that any goods were seized or that the initial asset restraint applied to the means of making the marks, and authorizing expedited discovery requests does not amount to a seizure of records. As a result, the counterclaim does not plausibly allege a seizure under 15 U.S.C. 1116(d)(1)(A).[9] On top of that, Inhale's allegation of bad faith—that Jergenson sought the TRO in bad faith because he knew that his products were illegal drug paraphernalia and lied to the court by asserting that his marks were valid—falls

---

[9] Jergenson argues that Inhale's wrongful seizure claim is moot. *See* [36-4] at 7–8. That the TRO has expired doesn't make Inhale's claim moot, because the wrongful seizure claim itself has not yet been adjudicated. *Cf. Central Soya Co., Inc. v. Consol. Rail Corp.*, 614 F.2d 684, 687 (7th Cir. 1980).

short. As discussed above at 6–12, Inhale's theory of unlawful use likely does not defeat Jergenson's marks, and seeking the TRO did not involve a lie about the marks' validity. The allegation that Jergenson knew the pipes were illegal drug paraphernalia does not support a finding of bad faith because that knowledge does not make an application for a TRO unreasonable when the marks are enforceable (at least presumptively and preliminarily). *See Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) (citation omitted).

Counterclaim four is dismissed without prejudice.

## IV.  Conclusion

Plaintiff's motion for a preliminary injunction, [20], is granted as to Inhale. The motion to dismiss, [36], is granted. Counterclaims one through four are dismissed without prejudice.[10] In light of this opinion and the pending closure of discovery, defendant's motion for summary judgment, [59], is denied as premature. Inhale may renew its motion after the parties complete discovery.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 12, 2023

---

[10] Ordinarily a party should be given at least one opportunity to amend a pleading. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015)). Inhale may re-plead counterclaims three and four if it can cure the defects identified in this opinion. The dismissal of the declaratory judgment counterclaims is without prejudice to Inhale presenting arguments and defenses in opposition to Jergenson's claims.