IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| PHILLIP JERGENSON,<br><br>                      Plaintiff,<br><br>               v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED IN SCHEDULE "A",<br><br>                      Defendants. | No. 22-cv-2040<br><br>Judge Manish S. Shah<br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

Pursuant to the Court's Minute Order entered on July 5, 2023 (ECF No. 90), Plaintiff Phillip Jergenson, through his undersigned counsel, respectfully submits this Response to Defendant's Motion for Attorney's Fees (ECF No. 89).

**INTRODUCTION AND SUMMARY**

On April 19, 2022, Plaintiff Phillip Jergenson filed this lawsuit against 241 defendants including Defendant Inhale International Limited ("Defendant" or "Inhale"), to combat the mass counterfeiting of the federally registered PROTO PIPE trademark. This case was dismissed on Plaintiff's Motion to Voluntarily Dismiss Inhale International Limited with Prejudice (ECF No. 84) as a result of Defendant's refusal to produce the owner of the company for deposition and the Court's denial of Plaintiff's motion to compel.

Inhale has filed a Motion for Attorney's Fees (ECF No. 89) pursuant to 15 U.S.C. §1117(a). It argues that the Court should declare this case exceptional and award Inhale attorney's fees because (1) Plaintiff's litigating position was weak and objectively unreasonable given the lack of evidence that Defendant ever used the trademark within the United States, Plaintiff's lack of

1

ownership rights to the trademark, and the alleged fraud on the USPTO during registration; and (2) the case was litigated by Plaintiff in an unreasonable manner. Both of these arguments are meritless.

Plaintiff objects to Defendant's motion on the basis that this is not an "exceptional" case under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). Plaintiff possessed a presumptively valid trademark and attempted to enforce its trademark rights. Neither the Court nor USPTO determined the trademark to be invalid. Defendant Inhale launched a product listing on Alibaba.com ("Alibaba"), offering products to United States consumers, under the title "Nickel Brass Old School Pipe Metal Tobacco *Proto Pipe*" (italics added). *See* Decl. of James E. Judge ("Judge Decl."), ¶ 7. Due to the lack of sales information from Alibaba[1] and repeated settlement rejections from Inhale, Plaintiff had to undergo discovery in order to determine the extent of the infringement. When the Court denied Plaintiff's Motion to Compel Discovery (ECF No. 82) and Defendant did not provide any record of their sales or the owner of Inhale to substantiate its claim of no US sales, Plaintiff promptly filed its Motion to Voluntarily Dismiss the case (ECF No. 83). Therefore, it is Defendant Inhale that is unreasonably extending this case and unnecessarily burdening the parties with additional fees by seeking attorney's fees to which it is not entitled. The Court should thus deny the Motion.

## ARGUMENT

**I.  Legal Standard**

The Court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.

---

[1] Alibaba did not produce any sales information related to the accused products upon being served a subpoena and the TRO. *See* Judge Decl., ¶ 8.

Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010)). The Lanham Act provides an exception to the American Rule. Pursuant to 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

Insofar as § 1117(a) "remains an exception to the American Rule, the standard for finding a case exceptional befits its definition--'uncommon,' 'rare,' or 'not ordinary.' " *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014). When analyzing whether a case is "exceptional" for purposes of awarding attorneys' fees under the Lanham Act, courts consider the substantive strength of a party's litigation position and whether the manner in which the case was litigated was unreasonable. *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021); *see also Octane*, 572 U.S. at 554 . The district court is afforded broad discretion in determining whether a case is "exceptional." *Octane*, 572 U.S. at 554. It is a case-by-case determination "considering the totality of the circumstances." *Id*.

While "there is no precise rule or formula," the district court "could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id*. at 554 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). District courts are uniquely suited to determine whether the case "stands out from others," *id*. at 1756, "because it lives with the case over a prolonged period of time." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014).

A party requesting fees under the Lanham Act bears the burden of proving by a preponderance of the evidence that the case is "exceptional" sufficient to warrant an award of attorneys' fees. *See Octane*, 572 U.S. at 557-58.

## II. This Case Is Not "Exceptional"

Defendant's purported proof that this case is "exceptional" consists of two arguments, which mainly question the merits of the case and the validity of the trademark[2]. However, these arguments fail to prove Plaintiff's claims were baseless or that Plaintiff acted abusively. Not only was Plaintiff's suit brought in good faith, but the claims were also meritorious and recently withdrawn only due to the exorbitant cost of continuing discovery. In no way can Plaintiff's conduct herein be viewed as akin to abuse of process and at no time did it engage in any posturing or conduct intended to drive up the costs of litigation. Rather, those are descriptors more appropriate to Defendant's conduct.

### A. Substantive Strength of Litigation

Defendant argues that this case is "exceptional due to the substantive weakness of Plaintiff's claims and litigation position" supported by the absence of evidence of Defendant's use of the trademark within the United States, Plaintiff's lack of ownership rights to the trademark, and the acquisition of the registration through fraud on the USPTO.

#### 1. Defendant Used Plaintiff's Trademark in the United States

To prevail on a trademark infringement claim under section 32 of the Lanham Act, Plaintiff must show that Defendant used in commerce, without Plaintiff's consent, any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's valid trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "The commercial use of a mark is not limited to cases where it was attached to a product that was actually sold." *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*,

---

[2] Defendant recycled claims already addressed and rejected by this Court in its January 12, 2023 Order on Plaintiff's Motion to Dismiss Defendant's Counterclaims (ECF No. 65).

703 F. Supp. 2d 777, 784 (N.D. Ill. 2010). Commercial use also extends to advertising and promotional activities. *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir.1999) (citing *T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed.Cir.1996)).

Alibaba.com is an online marketplace platform that allows third-party merchants to advertise, distribute, offer for sale, sell, and ship their retail products, originating from China, directly to consumers worldwide, specifically consumers residing in the United States, including in Illinois. *See* Judge Decl., ¶ 3. Contrary to Defendant's false statement in its motion that the product listing "was published by Alibaba, not Defendant" and accordingly Defendant didn't have "any involvement in the publication of said listing," Alibaba only opens product listings when merchants create and submit their product postings. *See* Judge Decl., ¶ 4; *see also* Ex. A to Judge Decl. Merchants have complete control over the product name, description, pricing, and keywords on their product listing. *See id*. Having complete control, Inhale chose to include Plaintiff's PROTO PIPE mark in its product title and description to drive consumers to its products. *See id*. If Defendant is not the merchant who listed the accused product, it would not have received notice of this case and has no reason to appear in this case.

Merchants on Alibaba also have the option to choose which regions and countries they want to sell their products. *See* Judge Decl., ¶ 5; *see also* Ex. B to Judge Decl. Unless Defendant selects the United States, the products would not be displayed or offered to consumers in the United States.

Defendant argues that the product listing on Alibaba does not allow for direct purchase of the product, thus not constituting an "offer for sale. However, Alibaba's official guide contradicts this claim, stating that buyers can either negotiate or buy right away. *See* Judge Decl., ¶ 6; *see also* Ex. C to Judge Decl. In order to buy right away, the product must be labeled as "Ready to Ship"

and shows a "Start Order" button on the product detail page. *See id*. A comparison below between the accused product listing and one of Defendant's current listings shows clear differences in the purchase methods. The accused product page has a "Start Order" button, allowing buyers to purchase the accused product without negotiation; as opposed to the Defendant's current listing which does not include this button. *See also* Judge Decl., ¶ 7; Ex. D and E to Judge Decl. At the time Plaintiff filed its lawsuit, Inhale had chosen the purchase method that would allow consumers to directly purchase the accused product from the Alibaba listing.



Accused Product



Defendant's Current Listing

An "offer for sale" is "one which the party *could* make into a binding contract by simple acceptance." *See Scaltech, Inc. V Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001) (emphasis added). Defendant, as shown in the "Accused Product" imaged above, has listed (1) the price, (2) the estimated shipping time in connection with the accused product, (3) a quantity box for consumers to specify the amount of the accused product they wish to purchase, and (4) an "Add to Cart" button to enable consumers to add their order to their online shopping cart and complete the purchase. Defendant's accused product was available for simple and direct purchase on Alibaba.

None of Plaintiff's claims can be considered frivolous or baseless which necessarily would render the case exceptional. Rather, this litigation was initially premised upon the belief that Defendant was offering for sale and selling smoking pipes that infringed Plaintiff's registered trademark. Defendant failed to provide any evidence proving that Plaintiff knew at the time of filing, or even before engaging in any discovery of Defendant, that it arguably did not make any

sales to customers in the United States thus weakening their argument regarding that this case is in any way "exceptional."

### 2. Plaintiff Owns the Presumptively Valid PROTO PIPE Trademark

Defendant argues that Plaintiff lacks ownership of the PROTO PIPE trademark because Plaintiff sold his pipe manufacturing business to Michael Lightrain in 1987. However, the issue before the Court at this stage is not an adjudication on the merits of the ownership, but rather a determination as to whether Plaintiff's claims were so "exceptional."

When Plaintiff filed the lawsuit, he owned the PROTO PIPE trademark, which is considered presumptively valid as it is registered with the USPTO. *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 2019 WL 4601741, at *2 (S.D.N.Y. Sept. 19, 2019) (*citing Reese Pub. Co., Inc. v. Hampton Intern. Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980)) ("if a mark is registered with the USPTO, then it is presumed to be a valid trademark when it is enforced against a use for which it was registered"). Plaintiff's enforcement of his valid trademark rights should not be considered "exceptional". *See O2 Media, LLC v. Narrative Sci. Inc*., 2017 WL 25175, at *2 (N.D. Ill. Jan. 3, 2017) (<u>the Court concluded that the case did not meet the requirements of "exceptional" in order for attorney's fees to be awarded. Although the plaintiff's patents were canceled later, they were still valid when the lawsuit was filed, and, therefore, entitled to presumption of validity when it was filed</u>).

Defendant's accusation of fraud is meritless as it fails to prove that Plaintiff knowingly made inaccurate or misleading statements. *See Illyrian Imp., Inc. v. ADOL Sh.p.k*., 2022 USPQ2d 292, *39 (TTAB 2022) (citing *In re Bose Corp*., 580 F.3d 1240, 91 USPQ2d 1938, 1939 (Fed. Cir. 2009) ("Fraud in procuring a trademark registration … occurs when an applicant… knowingly makes specific false, material representations of fact with the intent of obtaining or maintaining a

registration to which it is otherwise not entitled."). After Mr. Lightrain's inability to operate the business and cessation of manufacturing and selling the PROTO PIPE branded products, Plaintiff started to manufacture and sell the PROTO PIPE branded products and proceeded with the trademark application under the guidance of his trademark counsel. *See* Jergenson Dep., P. 122-124. Additionally, the Court has dismissed Defendant's counterclaim of fraud that was not properly pleaded and is insufficient to state a claim. *See* ECF No. 65. As a result, the PROTO PIPE trademark remains valid. Plaintiff had enforceable rights and standing to bring the lawsuit.

### 3. The Registration of the Trademark is Valid

Defendant argues that Plaintiff's registration is invalid due to fraud on the United States Patent and Trademark Office (USPTO) because of a supposedly inaccurate name of the registrant and "first use" date, as well as that the product can be used in connection with a variety of herbs.

Defendant argues that Plaintiff lacks standing to bring the lawsuit since the registrant no longer exists. The registration identifies Plaintiff as a sole proprietorship, DBA "Mendo Mountain Manufacturing." And it claims that Plaintiff admitted in his deposition that the proprietorship was established in around 2015 and dissolved around 2019, when he formed Proto Pipe LLC as its direct successor. However, listing a former name in an application is not grounds for invalidation. *See In re Techsonic Indus., Inc.*, 216 USPQ 619 (TTAB 1982) (If the owner of a mark legally changed its name before filing an application, but mistakenly lists its former name on the application, the error may be corrected, because the correct party filed, but merely identified itself incorrectly). Plaintiff listed his name on the application but merely identified himself incorrectly. This does not negate that he is the owner of the registration and does not invalidate the registration and enforceable right.

In addition, Defendant argues that the PROTO PIPE trademark is invalid due to fraud because the registration was issued based on Plaintiff's false representation that he used the trademark since 1976. "(F)raud must be shown by clear and convincing evidence in order to provide a basis for either cancellation or damages," and it may be found to exist "only where there is a deliberate attempt to mislead the Patent Office into registering the mark." *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir.1982). "An incorrect date of first use is not a material representation that serves as grounds for cancellation so long as the first use preceded the application date." *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 879–80 (N.D. Ill. 2008) (citing *Pony Express Courier Corp. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir.1989) ("The claim of a date of first use is not a material allegation as long as the first use in fact proceeded the date.... There is no dispute that Baker's use preceded the application date in 1972.")); *see also* McCarthy on Trademarks & Unfair Competition § 31:74 (4th ed.2008) (the Trademark Trial and Appeal Board has consistently held that a misstatement of the date of first use is not fraudulent so long as there has been valid use of the mark prior to the filing date).

Defendant also claims that Plaintiff fraudulently obtained the trademark registration under International Class 34 by falsely representing that the smoking pipe was intended for use with tobacco as Plaintiff designed the smoking pipe for use with marijuana, and Plaintiff knew that consumers primarily used it for smoking marijuana. Plaintiff never stated any use for the pipe other than "smoking." He testified that the pipe could be used for any kind of "herbs." *See* Jergenson Dep., P. 20. As the Court concluded previously, Plaintiff's subjective reasons for the design and his knowledge of some uses it might be put to does not constitute any kind of fraud upon the Trademark Office, because the product is objectively useful for legal purposes. *See*, ECF No. 65.

### B. Unreasonable Manner of Litigation

None of Defendant's arguments establishes that Plaintiff engaged in unreasonable conduct "so exceptional" as to merit fee-shifting. *See, e.g., Octane*, 572 U.S. at 555 (fees are appropriate "in the rare case" in which a party's unreasonable conduct is "so 'exceptional' as to justify an award of fees"); *Olaf Soot Design, LLC v. Daktronics, Inc.*, 406 F. Supp. 3d 328, 355 (S.D.N.Y. 2019) (finding the case was not exceptional under *Octane* despite allegations of meritless motions, threats of sanctions, and discovery misconduct). Plaintiff cooperated fully in discovery and prosecuted the case according to the rules. It was only when denied the deposition of the owner of Defendant that Plaintiff was forced to dismiss the case for want of necessary discovery.

Defendant's second argument is wholly based upon an incorrect presumption – "Plaintiff knew from the very start that the damages, if any, were minuscule." Motion at 12-13. Plaintiff had no knowledge of the amount of sales at the outset of this matter, or at any time thereafter. Alibaba refused to provide the required sales and financial information in response to the TRO. *See* Judge Decl., ¶ 8; *see also* Ex. F to Judge Decl. Plaintiff filed this action to enjoin others from offering for sale in the US any smoking pipes using "proto pipe" in the title or description of the advertisement. Contrary to Defendant's assertion, at the time of filing (following an extensive investigation), there was a reasonable basis to conclude that Defendant was offering goods for sale to the US bearing a counterfeit "proto pipe" mark. *See* Judge Decl., ¶ 7. The Lanham Act provides a cause of action against persons offering infringing and counterfeit goods, regardless of any sales. Accordingly, contrary to Defendant's conclusory assertions, Plaintiff had a good faith basis to involve Defendant in this case and to pursue discovery in order to verify the contentions in its written responses.

### III. The Attorney's Fees Requested Are Unreasonable

Assuming, *arguendo*, that the Court concludes a fee award is appropriate, the fee request is unreasonable. While the Seventh Circuit, like the Ninth, uses the lodestar method to determine the reasonableness of fees, the hourly rates to be used are the prevailing rates in the community. *See Blum v. Stenson*, 65 U.S. 886, 897 (1984). The prevailing hourly rate in Illinois according to an anonymized survey of hours recorded in the Clio law practice management system is $300. Judge Decl., ¶ 9. Even if the "community" were defined as trademark litigators in Chicago, Mr. Teran's claimed rate of $450.00 is well in excess of that charged by other attorneys in the field, such as Mr. Judge. *Id.*

The hourly rate should be reduced where appropriate to reflect the work performed, rather than the billing rate of the person who performed it. *Bell v. United Princeton Properties, Inc.,* 884 F.3d 713, 722 (3d Cir. 1989) (reduced rate appropriate for work that could have been performed by other, less costly professionals). Duplication of effort is also not compensable. *Eagle Forum v. Phyllis Schlafly's American Eagles,* 498 F.Supp.3d 1024, 1047 (S.D. Ill. 2020) In this matter, the bulk of Mr. Harper's time was spent opening notices sent by email through PACER that were also reviewed by Mr. Teran. His time reports say nothing about whether he did anything in response to those messages, or did anything substantive in the case, other than his initial briefing by Mr. Teran and review of the pleadings. All such time should be excluded, or in the alternative, reduced to paralegal rates.

### CONCLUSION

Considering the totality of the circumstances, this case is not "exceptional" or rare in terms of the substantive strength of Plaintiff's litigation position or the manner in which he litigated this case. Plaintiff, therefore, respectfully requests that the Court deny Defendant's Motion for Attorneys' Fees.

Dated: August 2, 2023                                    Respectfully Submitted,

/s/ James E. Judge<br>
Zareefa B. Flener (IL Bar No. 6281397)<br>
James E. Judge (IL Bar No. 6243206)<br>
Flener IP Law, LLC<br>
77 W. Washington St., Suite 800<br>
Chicago, IL 60602<br>
(312) 724-8874<br>
jjudge@fleneriplaw.com